[No. 20606.   Department Two.   December 15, 1927.]

Ernest J. Froehlich, *Appellant,* v. Muriel
Froehlich, *Respondent.*[1]

[1] Divorce (5, 7, 36)—Cruelty—Habitual Drunkenness—Evi-
dence—Sufficiency. It is error to deny a divorce to a man
where the evidence clearly shows that his wife was addicted
to the use of intoxicating liquors and practiced prostitution,
and refused to reform after promises to do so, without a word
of proof that the husband had been guilty of any like offenses.

Appeal from a judgment of the superior court for
Spokane county, Witt, J., entered January 17, 1927,
upon findings in favor of the defendant, in an action
for divorce, tried to the court. Reversed.

*James A. Brown,* for appellant.

Holcomb, J.—These parties were married at Spo-
kane in September, 1918, and are still husband and
wife. They have been separated since September,
1925. For several months respondent had sought a
reconciliation. She resisted a divorce. There is no
issue of the marriage and no property belonging to the
parties.

After hearing the evidence in this case, the court
made a statement that there were some things in the
testimony that he disbelieved and some that he be-
lieved, but that, from it all, he gathered the opinion
that respondent was practicing prostitution and was
a prostitute when appellant married her. He there-
fore considered that appellant was not entitled to a
divorce, and that his action should be dismissed.

The court made findings against the appellant, some
of which we consider contrary to the preponderance of
the disinterested testimony in the case. Appellant

[1] Reported in 262 Pac. 118.

testified that, at the time of their marriage, he was a brakeman on a railroad running east out of Spokane, and respondent was a waitress in a restaurant in Hillyard in Spokane county. He admitted that, prior to their marriage, they lived together for about seven months as husband and wife, while she declared that it was about eleven months, and the court found it to have been eleven months.

[1] Appellant testified that, after their marriage, respondent became addicted to the use of intoxicating liquor over his objections, and frequently became drunk and stayed drunk for several days, remaining away from home, and her whereabouts unknown to appellant. The parties separated once or twice before their final separation, but, upon the promise of respondent to reform her habit of becoming drunk and agreeing to lead a moral life, the marital relation was resumed until September, 1925.

Respondent contended and testified that, after the marriage of the parties, in 1919-20, appellant was out of work for some time. During that time, she stated that, at his instance and with his approval, she practiced prostitution, living in various hotels or lodging houses in Spokane, and that she was furnished liquor at times by appellant, who followed the business of bootlegger. These statements were positively denied by appellant. He claimed to have saved a few hundred dollars from his wages and that they borrowed one hundred and twenty-five dollars from her mother, which respondent admitted, on which they lived while he was out of work for a few months. From other evidence, it appears that appellant is a steady, hard-working man, and at least for five years next before the trial of this case in December, 1926, had been employed by the same concern in Spokane. He had worked for other concerns outside of Spokane for long periods. It is

hard to believe that he was a steady worker and also a bootlegger.

Disinterested witnesses testified that they saw her in the act of adultery with a man other than her husband, and another saw her in bed with other men on divers occasions. She herself admitted that she practiced prostitution for many months and earned from thirty to seventy-five dollars per day at that practice. Notwithstanding her admission that she practiced prostitution for long periods of time, she contradicted every witness who testified to seeing her in the act of prostitution, or under circumstances clearly showing that that was the purpose of her association with the men seen with her. Notwithstanding these inconsistencies and her known character, the trial court found the facts in conformity with her evidence and against the evidence of disinterested witnesses.

There was disinterested evidence that, at one time, she threatened the life of appellant with a revolver, while occupying a room at a hotel in Spokane, and while she was intoxicated. There was also disinterested evidence that she often called appellant vile names and referred to him as "a lunch bucket stiff," or "a dinner bucket man." She admitted that her husband endeavored to get her to abandon her practice of prostitution and drunkenness and that she promised she would do so.

It is unnecessary to go into other details of the evidence. The complaint was based upon the grounds of cruel and inhuman treatment, personal indignities, incompatibility and adultery or prostitution on the part of respondent, so that the parties could no longer live together as husband and wife.

We have found three cases similar to this in the books: *Baylis v. Baylis,* 1 L. R. P. & D. 394, the earliest case, where a young man married a woman of loose

character with whom he had lived for nine months prior to their marriage. ° After marriage they disagreed and she returned to a life of prostitution. The court said:

"It has been sometimes supposed that if a man chooses to marry an immodest woman, he cannot afterwards free himself from her by reason of her unchastity. But there is no such law. Whatever the previous life of a woman may have been, she binds herself by marriage to chastity, and if she break the conditions of marriage, her husband is entitled to claim its dissolution."

The next case is that of *Levy v. Levy,* 16 Ill. App. 358. In that case, a man married a prostitute upon her promise to reform, and she thereafter again resorted to a life of prostitution. In that case, among other things, it was said in the opinion:

"The court below seems to have entertained the view that having knowingly married an immodest woman, though upon her promise of reformation, the husband can not complain if she be guilty of adultery after the marriage. In this view we are unable to concur. The statute makes the commission of adultery by either party subsequent to the marriage cause for divorce. No exception or reservation is made in favor of or against any particular class of persons.

"Aside from the promise of the defendant to reform, the vows at the marriage altar are themselves the most sacred promises that thenceforth, forsaking all others, the parties will lead chaste lives, and be faithful to their marital relations. However mistaken the complainant may have been in believing that, by conferring upon the defendant the honorable condition of wifehood, he would thereby restore her to a life of purity, he had a right to rely upon her promise to be true to him. To hold that when she thereafter was found sinning, the complainant is to be forever tied to a woman lost to every sense of decency and gratitude, and whom he had endeavored to clothe with the garment of respectability by making her his wife, is re-

volting to our sense of justice, and is not sanctioned by any sound rule of law.'' (Citing *Baylis v. Baylis,* 1 L. R. P. & D. 394.)

The last similar case found is *Roote v. Roote,* 33 D. C. App. 398, 23 L. R. A. (N. S.) 240. In that case, a man had illicit sexual relations with his wife before marriage, and married her when she was actually an inmate of a house of prostitution, but it was held that those facts did not destroy his right to a divorce, after her refusal to leave such a house when he desired to give her a respectable home and she there continued in continuous acts of adultery.

In the instant case, there is not a word of testimony to the effect that appellant himself had been guilty of like offenses against respondent. Hence the rule that a person coming into a court seeking a divorce must be innocent of any substantial wrongdoing towards the other person of the same nature as that upon which his complaint is made, does not apply here. *McMillan v. McMillan,* 113 Wash. 250, 193 Pac. 673.

Nor is this such a case as *Stanley v. Stanley,* 24 Wash. 460, 64 Pac. 732, where a young man married a lewd woman who had caused him to be arrested and prosecuted on the charge of seduction. He lived with her for five months and then deserted her. She sought restoration of the marital relation then and for a long time thereafter. This court held that her acts were provoked by his conduct, and that he was not entitled to a divorce. Such is not the case here.

Upon the facts of this case and the law applying to such a situation, we are convinced that appellant is entitled to a decree of divorce.

The judgment is therefore reversed, with instructions to enter a decree in favor of appellant.

Mackintosh, C. J., Fullerton, Main, and Askren, JJ., concur.